**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JONATHAN MARTINEZ and RAQUEL SAUCEDO, individually and on behalf of a class of persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> T-MOBILE LIMITED, A/K/A WIRELESS VISION, LLC; WIRELESS VISION, ST, LOUIS, LLC; WIRELESS VISION HOLDINGS, LLC; MARK DENHA; OMAR AMMORI and SABER AMMORI, <br><br> Defendants. | Case No. <br><br> **PLAINTIFFS DEMAND TRIAL BY JURY** |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs, JONATHAN MARTINEZ and RAQUEL SAUCEDO, individually and on

behalf of a class of persons similarly situated (referred to collectively as "Plaintiffs"), through

their attorneys, complain against Defendants, T-MOBILE LIMITED, A/K/A WIRELESS

VISION, LLC; WIRELESS VISION, ST, LOUIS, LLC; WIRELESS VISION HOLDINGS,

LLC; MARK DENHA; SABER AMMORI; and OMAR AMMORI, all defendants d/b/a T-

MOBILE, LIMITED, and each of them, jointly and severally (the "Defendants"), as follows:

## THE PARTIES AND JURISDICTION

1.     Defendants operate over 250 retail locations of the well-known mobile telephone

franchise, throughout the country, including in Illinois.   Plaintiffs are former Wireless

Vision employees who bring this action to recover unpaid wages, unpaid straight time and overtime compensation, liquidated damages, statutory penalties, attorneys' fees, and costs from Defendants, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"), the Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.* (the "IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS § 115/1, *et seq.* (the "IWPCA").

2. Jurisdiction over this action is conferred on this Court by 28 U.S.C. § 1331 on the basis of federal question jurisdiction, as the matter concerns an action arising under the laws of the United States, and by Section 16(b) of the FLSA, 29 U.S.C. § 216(b). This Court's supplemental jurisdiction over Plaintiffs' Illinois claims arising under the IMWL and the IWPCA is required pursuant to 28 U.S.C. § 1367(a), because those claims are so related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this Court pursuant to 29 U.S.C. § 1391 as the illegal conduct alleged herein occurred in this district.

4. Plaintiffs bring Count I of this action as a collective action, pursuant to Section 216(b) of the FLSA, 29 U.S.C. § 216(b). Plaintiffs bring Counts II and III of this action as a Rule 23 class action, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).

5. Plaintiffs JONATHAN MARTINEZ and RAQUEL Saucedo are residents and citizens of Chicago, Illinois and are former employees of Defendants. Both Mr. Martinez and Ms. Saucedo worked as employees for Defendants, customarily and regularly at several of Defendants' locations, and held the title of "Sales representative." Plaintiffs customarily

and regularly were paid an hourly rate along with a commission, for their work in a non-exempt position. The work performed by Plaintiffs included meeting with customers at Defendants' retail locations, reviewing customers' needs, recommending products, closing sales, and related tasks.

6. Defendant WIRELESS VISION, LLC is registered with the Illinois Secretary of State as a foreign limited liability company; and has registered "T-MOBILE, LIMITED" with the ISOS as an assumed name. It is organized under the laws of the State of Michigan, with its principal office at 40700 Woodward Avenue, Suite 250, Bloomfield Hills, Michigan. It is managed by Defendant MARK DENHA and by Defendant SABER AMMORI.

7. Defendant WIRELESS VISION, ST, (sic) LOUIS, LLC is also registered with the Illinois Secretary of State as a foreign limited liability company. It is also organized under the laws of the State of Michigan, with its principal office at 40700 Woodward Avenue, Suite 250, Bloomfield Hills, Michigan. It is also managed by Defendant MARK DENHA and by Defendant SABER AMMORI.

8. Defendant WIRELESS VISION HOLDINGS, LLC is is also registered with the Illinois Secretary of State as a foreign limited liability company. It is also organized under the laws of the State of Michigan, with its principal office at 40700 Woodward Avenue, Suite 250, Bloomfield Hills, Michigan. It is also managed by Defendant MARK DENHA and by Defendant SABER AMMORI. Upon information and belief, it owns Defendants WIRELESS VISION, LLC and WIRELESS VISION, ST, LOUIS, LLC.

9. Defendant MARK DEHNA is a designated managing member of each of the three Defendant limited liability companies. Upon information and belief, Defendant MARK

DEHNA has a significant ownership interest in the corporate Defendants, and operational control of significant aspects of one or more of those entities' day-to-day functions.

10. Defendant SABER AMMORI is also a designated managing member of each of the Defendant limited liability companies. Upon information and belief, Defendant SABER AMMORI has a significant ownership interest in the corporate Defendants referenced above, and operational control of significant aspects of one or more of those entities' day-to-day functions.

11. Defendant OMAR AMMORI is also a designated managing member of each of the Defendant limited liability companies. Upon information and belief, Defendant OMAR AMMORI has a significant ownership interest in the corporate Defendants referenced above, and operational control of significant aspects of one or more of those entities' day-to-day functions.

12. At all relevant times, Defendants have been and are each an "enterprise engaged in commerce" as defined by Sections 3(r) and (s) of the FLSA, 29 U.S.C. §§ 203(r) and (s).

13. At all relevant times, each of Defendants have been "employers" as defined by Section 3(d) of the FLSA, 29 U.S.C. § 203(d); and Section 3(c) of the 3, 820 ILCS § 105/3(c); and Section 2 of the IWPCA, 820 ILCS § 115/2.

14. At all relevant times, each of the Plaintiffs and each of the putative class members Plaintiffs MARTINEZ and Saucedo seek to represent were "employees" of Defendants as defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e); Section 3(d) of the IMWL, 820 ILCS § 105/3(d); and Section 2 of the IWPCA, 820 ILCS § 115/2.

## FACTS IN SUPPORT OF PLAINTIFFS' CLAIMS

15.    Defendants have employed Plaintiffs to perform work for Defendants, as "non-exempt" hourly employees.

16.    Plaintiffs were and are non-exempt employees under the FLSA and the IMWL, because of their positions and respective duties.

17.    Plaintiffs worked as Sales Representatives and possibly similarly titled positions at Defendants' retail stores, during the three years prior to the filing of this Complaint.  That period of time through the present is referred to herein as "the Class Period".

18.    Plaintiffs and all similarly situated employees were trained by Defendants in accordance with very specific requirements mandated by Defendants.

19.    Plaintiffs were hired by and employed by Defendants with the agreement between them that Plaintiffs were to be paid an agreed upon hourly rate of pay for all time worked for Defendants.

20.    Notwithstanding that agreement, Defendants failed to pay Plaintiffs Martinez and Saucedo, and all other non-exempt hourly employees working as Sales Representatives or in similar positions, for all of the time Plaintiffs spent working for Defendants during the Class Period, even though such time was required and/or permitted to be worked by Defendants.

21.    Specifically, during the Class Period, Defendants failed to pay Plaintiffs for time worked prior to clocking in for the beginning of the scheduled shift of each employee, notwithstanding that Plaintiffs were required to and in fact did work for Defendants for up to an hour of time (and sometimes more), prior to the time they were permitted to

clock in each day that they were assigned to work; and, in addition, Defendants failed to pay Plaintiffs for time worked following the time they were required to clock out, even though Plaintiffs were required to and in fact did work for Defendants for several hours of time (and sometimes more), subsequent to the time they had clocked out, each day they were assigned to work.

22. Defendants implemented a compensation system based upon the gross revenue earned per hour by each sales person; and paid employees a commission based upon that revenue, and based upon revenue goals for each sales person.

23. Store managers and assistant managers were also compensated based upon goals for revenue earned per hour by store employees.

24. Thus, store managers and assistant managers were incentivized to reduce the total number of hours reported as worked by sales persons, in order to increase the revenue earned per hour by sales persons and by store managers and assistant managers.

25. Defendants also regularly failed to provide Plaintiffs with two fifteen-minute breaks during their shifts.

26. Plaintiffs were often scheduled to work and worked more than seven and one-half continuous hours for Defendants during their shifts; and did so without any break permitted by Defendants.

27. Defendants frequently failed to provide Plaintiffs with any meal break during many of Plaintiffs' shifts and instead required Plaintiffs to continue to work, even though Plaintiffs were to work more than seven and a half continuous hours, and even though Defendants clocked Plaintiffs out, or required Plaintiffs to clock themselves out, for a meal period.

28.    Defendants failed to provide Plaintiffs with an uninterrupted meal break of at least twenty minutes in duration; and/or Defendants failed to provide a meal break that started within five hours after the time Plaintiffs began work.

29.    During the Class Period, Defendants did not permit sales persons to enter sales information into the store's computer system during store hours when customers were present, instead requiring that such work be performed after customers had left the store at the end of the day, and after Sales Representatives had clocked out.

30.    Other work performed by Plaintiffs during the Class Period while off the clock included entering the day's sales information into a computer database; restocking product, equipment and supplies; cleaning the store; calculating deposits to be made to the bank depository; and making the deposits, both before and after Plaintiffs' work time was clocked, or recorded.

31.    Plaintiffs complained to management about Defendants' failure to properly account for and compensate Plaintiffs for the time they worked and thus the work they performed.

32.    Defendants have and have had a policy and practice of requiring and/or permitting Plaintiffs to perform work during their unpaid meal breaks during the Class Period.

33.    Defendants have and have had a policy and practice of requiring and/or permitting Plaintiffs to perform work before clocking in at the start time of their shifts during the Class Period.

34.    Defendants have and have had a policy and practice of requiring and/or permitting Plaintiffs to perform work after clocking out at the end of their shifts during the Class Period.

35.     Defendants recorded some of the time worked by all Plaintiffs through the use of a
        computerized time keeping system, operated through the cash registers at Defendants'
        stores.

36.     Defendants' management was able to and did log employees into and out of the
        computerized time keeping system.

37.     Upon information and belief, the data entered into the computerized time keeping
        systems was transmitted to and reviewed by all Defendants, along with actual payroll
        data for the same time periods; and a reasonable review of that data and subsequent data
        reflecting actual pay would reflect that the Plaintiffs' time worked had been altered or
        reduced from the time actually worked, and/or that meal breaks were worked but unpaid.

38.     Hundreds of non-exempt hourly employees employed by Defendants during the Class
        Period have used cash register data entry and/or other electronic time clocking as their
        daily timekeeping system, similarly to the named Plaintiffs.

39.     While working as Sales Representatives, Plaintiffs and the putative class members were
        instructed by Defendants and/or other managerial and/or supervising employees of
        Defendants acting under the direction and control of Defendants, and with the knowledge
        of Defendants to begin working, but not to clock in, in order to increase the revenue per
        hour generated by Sales Representatives.

40.     While working as Sales Representatives during the Class Period, Plaintiffs and the
        putative class members would therefore regularly arrive for work and begin working, but
        not clock in for work, with Defendants' knowledge and at Defendants' direction.

41.    While working as Sales Representatives during the Class Period, Plaintiffs and the
putative class members regularly performed work before clocking in, including but not
limited to collecting supplies, preparing equipment, meeting with supervisors, cleaning
the store, and other work and assigned tasks.

42.    While working as Sales Representatives during the Class Period, Plaintiffs and the
putative class members regularly performed work after clocking out, including but not
limited to restocking and collecting supplies, preparing bank deposit information,
meeting with supervisors, and other work and assigned tasks.

43.    While working as Sales Representatives during the Class Period, Plaintiffs and the
putative class members regularly worked through some or all of their unpaid lunch
breaks.

44.    While working as Sales Representatives during the Class Period, Plaintiffs and the
putative class members regularly continued to work after clocking out.

45.    During the FLSA statutory recovery period, Defendants adjusted actual clock-in and
clock-out times to reduce the total number of hours recorded by Sales Representatives,
which typically resulted in the Plaintiffs and putative class members not being paid for
their actual time worked.

46.    During the Class Period, Plaintiffs  and the putative class members were regularly not
paid for the additional straight time performed prior to the time they clocked in for their
scheduled shifts.

47. During the Class Period, Plaintiffs and the putative class members were regularly not paid for the additional straight time performed after clocking out at the end time of their scheduled shifts.

48. During the Class Period, Plaintiffs and the putative class members were not regularly paid for the additional overtime work performed prior to the time they were clocked in for their scheduled shifts.

49. During the Class Period, Plaintiffs and the putative class members were regularly not paid for the additional overtime work performed after they were clocked out for their shifts.

50. During the Class Period, Plaintiffs and the putative class members were not regularly paid for the additional straight time or overtime work, as the case may be, performed during their unpaid meal breaks.

51. During the Class Period, Defendants failed to record, through Plaintiffs' and the putative class members' time keeping records, the exact times of any break periods provided to Plaintiffs and the putative class members.

52. Plaintiff Saucedo estimates that she often worked a minimum of eight hours per work week of unpaid time, off the clock, some of which may constitute overtime.

53. Plaintiff Martinez estimates that he often worked a minimum of twenty hours per work week of unpaid time, off the clock, most of which constitutes overtime.

54. When Plaintiff Martinez' clocked-in time exceeded forty hours per work week, Defendants typically changed his recorded time records to reduce the time reflected as worked to less than forty hours per week.

55. Records indicating the approximate number of hours that Plaintiffs and the putative class members worked and were paid are in the exclusive possession and control of Defendants.

56. Defendants' practice of reducing employees' time and requiring Plaintiffs and putative class members to work off the clock is wide-spread and has occurred for a significant period of time during the Class Period.

57. The identity of the employees who were injured as set forth above can be determined from the time records themselves, which are required to be kept by Defendants pursuant to 29 C.F.R. § 516 and the FLSA.

58. The setting of wage and hour policies and practices for Defendants' employees is directly established by Defendant MARK DENHA and by Defendant SABER AMMORI and/or Defendant OMAR AMMORI, and implemented by them and their management upon the employees working for Defendants.

59. At all times relevant herein, Defendant MARK DENHA, Defendant SABER AMMORI and Defendant OMAR AMMORI directly and/or jointly with all other Defendants, originated, controlled and implemented the policy, practice and procedure of paying Plaintiffs for a portion of their time worked and not the actual time worked and/or all time worked by Plaintiffs.

60. As a result of Defendants' wage and hour practices as alleged herein, the Defendants benefited from reduced labor and payroll costs which, in turn, increased the earnings of all of the Defendants.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

**(Brought as a Collective Action by Plaintiffs JONATHAN MARTINEZ and RAQUEL Saucedo, on Behalf of All Others Similarly Situated)**

1-60.  Plaintiffs re-allege Paragraphs 1 through 60 as and for Paragraphs 1 through 60 of this Count I.

61.     Plaintiffs bring this count as a collective action on behalf of themselves and other similarly situated hourly employees  pursuant to 29 U.S.C. §216(b) to recover unpaid straight time wages, overtime wages, liquidated damages, attorneys' fees and costs, and other damages owed.

62.     Plaintiffs and the putative class members are hourly-paid, non-exempt employees whom Defendants employed during the three year statutory period and whose daily time worked was reduced and/or unpaid as described above.

63.     The proposed collective class of similarly situated persons is defined as

> "All individuals who were and/or are currently employed by the Defendants, their subsidiaries, affiliates, predecessors and/or successors, as Sales Representatives or other similarly titled positions at any time during the relevant statute of limitations who worked but were not paid for all time worked."

64.     Common questions of law and fact exist as to all members of the class and predominate over any questions that affect only individual members of the class.  These common questions of law and fact include:

> i)      whether Defendants improperly changed or reduced the actual clock-in and clock out times for Sales Representatives;

> ii)     whether Defendants failed to pay Sales Representatives for the time they worked prior to or after their clocked-in time; and

iii)  whether Defendants improperly failed to pay Sales Representatives for time worked during their unpaid meal breaks.

65.  Defendants operated under a scheme and practice, as described above, to deprive Plaintiffs and the collective class of straight time and overtime compensation and thereby increase their earnings and, ultimately Wireless Vision's profits.

66.  Section 206(a)(1) of the FLSA requires that an employer must pay its employees straight time, at the federally-mandated rate of pay, for all hours worked each week.

67.  Section 207(a)(1) of the FLSA requires that an employer must pay its employees overtime, equal to at least one and one half times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

68.  Plaintiffs and the putative class members were not paid for all hours worked in a week; and were not paid for all hours worked in excess of 40 in a week, in violation of the minimum and maximum hours provisions of the FLSA, to wit, 29 U.S.C. 206(a) and 207(a).

69.  Plaintiffs and members of the collective class were subject to the control of Defendants and engaged in activities that were not undertaken for Plaintiffs' own convenience; that were necessary for the performance of their duties for Defendants; and integral and indispensable to their principal activities.  Despite this, Plaintiffs and other members of the collective class regularly were required to work "off the clock" as set forth herein, that entitled them to compensation:

a.  During meal periods, which were not time for which Plaintiffs were paid; Defendants required and/or permitted Plaintiffs and the putative class members to work and to remain on duty on the premises or at a prescribed work site in the interest of the employer;

b. Prior to clocking in; Defendants required and/or permitted Plaintiffs and the putative class members to work off the clock prior to the time that the employee clocked in; and

c. After clocking out; Defendants required and/or permitted Plaintiffs and the putative class members to remain on duty on the premises or at a prescribed work site, after they were clocked-out and off the clock, in the interest of the employer.

70. Defendants' off-the-clock practices violated the straight time and overtime provisions of the FLSA because Defendants did not pay the straight time and overtime wages for all work performed by Plaintiffs and the similarly-situated employees.

71. Defendants' time-keeping practices as set forth herein violate the record-keeping requirements set forth in Section 29 U.S.C. § 211(c), and in 29 C.F.R. § 516.2(7)-(9).

72. At all times relevant hereto, the action of Defendants in not paying straight time pay for all hours worked in a week, and overtime or premium pay for all hours worked over 40 in a week, and their failure to keep accurate payroll records was willful in that Defendants knew that the FLSA required them to pay Plaintiffs straight time for all hours worked and time and one-half for all hours worked over 40 in a workweek and Defendants knew that the FLSA required them to maintain true and accurate records.

73. As a direct and proximate result thereof, Plaintiffs and similarly situated employees are due unpaid time and liquidated damages, pursuant to 29 U.S.C. § 216.

74. Plaintiffs request that the Court authorize notice to the members of the collective class to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. §216(b), for the purpose of seeking unpaid straight time and overtime compensation, liquidated damages under the FLSA, and the other relief requested herein.

75.     Plaintiffs estimate that there are over one thousand (1,000) putative members of the

collective class.  The precise number of collective class members can be ascertained by

using Defendants' payroll and personnel records.

WHEREFORE, Plaintiffs JONATHAN MARTINEZ and RAQUEL Saucedo seek the

entry of an order of judgment against Defendants, jointly and severally, under Count I as follows:

A.     Authorizing notice at the earliest possible time, informing the similarly situated Sales Representatives that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they worked regular hours or overtime hours in excess of forty hours in a week during the liability period;

B.     Ordering Defendants to furnish to counsel a list of all names and last known addresses of all non-exempt hourly-paid Sales Representatives employed by Defendants who currently or previously worked for Defendants in the United States within three years of the filing of the original Complaint;

C.     Declaring and finding that Defendants committed one or more of the following acts:

i.  Violated straight time provisions of the FLSA by failing to pay straight time wages to Plaintiffs and similarly situated persons who opt-in to this action;

ii.  Violated overtime provisions of the FLSA by failing to pay overtime wages to Plaintiffs and similarly situated persons who opt-in to this action; and

iii.  Willfully violated the wage provisions of the FLSA; and

iv.  Willfully violated the record keeping provisions of the FLSA;

D.     Awarding compensatory damages, including all pay owed, in an amount according to proof;

E.     Awarding liquidated damages on all compensation due accruing from the date such amounts were due;

F.     Awarding all costs and reasonable attorneys' fees incurred in prosecuting this claim; and

G.     For such further relief as the Court deems just and equitable.

**COUNT II**
**VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW**

**(Brought as a Class Action by Plaintiffs JONATHAN MARTINEZ and RAQUEL Saucedo, Individually and on Behalf of All Others Similarly Situated)**

76.     Plaintiffs re-allege Paragraphs 1 through 60 as and for Paragraph 76 of this Count II.

77.     This Count arises from Defendants' willful violation of the IMWL for Defendants' failure to pay Plaintiffs and a Rule 23 class of Illinois employees all of their earned minimum wages and overtime wages under the provisions of the IMWL. Plaintiffs and the class are current and former Illinois employees of Defendants who are due, and who have not been paid, minimum wages and overtime wages for all time worked by them.

78.     Section 105/4 of the IMWL requires employers to pay employees the statutory rate for all hours worked during a work week. Section 105/4(a) of the IMWL requires employers to pay employees one and one half times their regular rate for all hours worked over 40 per work week. Section 105/12 provides that employers who violate the provisions of this act are liable to affected employees for unpaid wages, costs, attorney's fees, damages of 2% of the amount of any such underpayment for each month following the date of underpayments and for other appropriate relief.

79.     Defendants violated the IMWL by regularly and repeatedly failing to properly compensate Plaintiffs and similarly-situated employees for the straight time and overtime they worked each week.

80.     The proposed class of similarly situated persons is defined as:

> All individuals who were or are currently employed by Defendants, their subsidiaries, affiliates, predecessors and/or successors, as Sales Representatives or other similarly titled positions in the State of Illinois at any time during the relevant statute of limitations who worked but were not paid for all time worked.

81. Defendants' failure to compensate Plaintiffs and the putative class for the full amount for all time worked violates Section 4 and Section 4(a) of the IMWL, 820 ILCS 105/4, 4(a).

82. Count II is brought pursuant to Fed. R. Civ. P. 23(a) and 23(b) because the class of plaintiffs is so numerous that joinder of all class members is impracticable.

83. The class representatives and the putative class members have been equally affected by Defendants' failure to pay straight time and overtime wages.

84. Furthermore, those putative class members still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

85. The issues involved in this lawsuit present common questions of law and fact, specifically:

   i.  Whether Defendants' employees were required and/or permitted to arrive early to work before the start of their scheduled shift times and/or remain at the workplace past the end of their scheduled shift times in order to perform work; and

   ii.  Whether the putative class members were unpaid for their pre-shift and post-shift work; and

   iii.  Whether the putative class members performed work during at least some of their unpaid meal breaks.

86. These common questions of law and fact predominate over the variations which may exist between members of the class, if any.

87.     The class representatives, the class members, and Defendants have a commonality of

interest in the subject matter and remedy sought.

88.     The class representatives are able to fairly and adequately represent and protect the

interests of the class.  If individual actions were required to be brought by each member

of the class injured or affected, the result would be a multiplicity of actions, creating a

hardship to class members, to the Court, and to the Defendants.

89.     Accordingly, a class action is an appropriate method for the fair and efficient adjudication

of this lawsuit and distribution of the common fund to which the class is entitled.

WHEREFORE, Plaintiffs JONATHAN MARTINEZ and RAQUEL Saucedo seek the

entry of an order of judgment against each of the Defendants, jointly and severally, under Count

II as follows:

A.     Certify a class of individuals who were employed by Defendants as hourly-paid
non-exempt employees in the State of Illinois at any time during the relevant
statute of limitations period;

B.     Declare and find that the Defendants committed one or more of the following
acts:

i.   Violated provisions of the Illinois Minimum Wage Law, 820 ILCS §105 *et
seq*., by failing to pay minimum wages to Plaintiffs;

ii.  Violated overtime provisions of the Illinois Minimum Wage Law, 820 ILCS
§105 *et seq*., by failing to pay overtime wages to Plaintiffs; and

iii. Willfully violated minimum wage and overtime provisions of the Illinois
Minimum Wage Law, 820 ILCS §105 *et seq*.

C.     Award compensatory damages, including all regular and overtime pay owed, in an
amount according to proof;

D.     Award interest on all regular and overtime compensation due accruing from
the date such amounts were due;

E.    Award all costs and reasonable attorney's fees incurred prosecuting this claim; and

F.    For such further relief as the Court deems just and equitable.

## COUNT III

**VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT**

**(Brought as a Class Action by Plaintiffs JONATHAN MARTINEZ and RAQUEL Saucedo, Individually and on Behalf of All Others Similarly Situated)**

1-60, 76-89.  Plaintiffs re-allege Paragraphs 1 through 60 and Paragraphs 76 through 89 and incorporate those allegations herein.

90.    Plaintiffs, individually and on behalf of all others similarly situated, bring this Count III to recover from Defendants unpaid wages, overtime compensation, statutory penalties, attorneys' fees, and costs, pursuant to Section 14(a) of the Illinois Wage Payment and Collection Act, 820 ILCS § 115/14(a).

92.    At all times relevant, Defendants have been "employers," as that term is defined by Section 2 of the IWPCA, 820 ILCS § 115/2, of the Plaintiffs and members of the putative IWPCA Sub-Class.

93.    At all times relevant, Plaintiffs and the members of the putative IWPCA Sub-Class have been "employees" of Defendants, as that term is defined by Section 2 of the IWPCA, 820 ILCS § 115/2.

94.    At all times relevant, and at Defendants' request, Plaintiffs and the members of the putative IWPCA Sub-Class performed work for Defendants before and after the time

they were clocked in for their shifts, as well as during all and/or part of their unpaid meal breaks.

95. At all times relevant hereto, Defendants were aware that its hourly employees and Sales Representatives performed work and work-related tasks before and after the time they were clocked in for their shift, on a routine basis.

96. The task of performing work and work-related tasks before and after the time they were clocked in is an essential component of Defendants' business operations at their retail stores.

97. Defendants at all times considered the tasks performed by Sales Representatives and hourly workers before and after the time they were clocked in to be compensable work, had that same work been performed while clocked in.

98. Defendants' employee handbook permits and/or requires its Sales Representatives and hourly employees to perform work for Defendants before and after they are clocked in.

99. Defendants' managers and/or supervisors often observed Sales Representatives and hourly workers performing work and work-related tasks for Defendants before and after they were clocked in, and often assisted them in performing that work.

100. Under Defendants' policy and practice, Defendants required Plaintiffs to be present for work before and after they were clocked in, on a daily basis.

101. Defendants' business records reflected data, so that each of the Defendants could see and know that Sales Representatives and hourly employees routinely performed work for Defendants before and after they were clocked in.

102. Defendants, including MARK DENHA, SABER AMMORI, and OMAR AMMORI, and each of them, could see and know that Sales Representatives and hourly employees routinely performed work for Defendants before and after the time they were clocked in.

103. Defendants did not instruct Plaintiffs and similarly situated employees to not perform work for Defendants before and after they were clocked in.

104. Defendants permitted and/or required their hourly employees to perform services after those employees had clocked out but before they were allowed to go home or to otherwise engage in non-work activities.

105. By knowing of, permitting and/or requiring hourly employees to perform services for Defendants before and after they were clocked in, Defendants assented to hourly employees performing services before and after they were clocked in.

106. Defendants assented to pay Plaintiffs and the members of the putative IWPCA Sub-Class at an agreed-upon hourly rate at or in excess of the applicable Illinois Minimum Wage hourly rate, for all work Defendants permitted and/or required, including at 1.5 times their regular hourly rate for all time beyond 40 hours worked in a week.

107. Defendants assented to the hourly employees performing services before, during and after they were clocked in, including during meal breaks, by, among other means, Defendants' knowledge and awareness of those duties being performed at those times, Defendants' policy and practice of permitting and/or requiring hourly employees to perform services before and after they were clocked in, and during their meal breaks, by the lack of any instruction or meaningful effort by Defendants to forbid or not allow the hourly employees to perform services before or after they were clocked in, and through

employee manuals and other directives distributed at and after an employee's orientation period that informed Plaintiffs and the members of the putative IWPCA Sub-Class that they must perform work duties before and after they were clocked in.

108. As set forth *supra*, Defendants also demonstrated their assent to the work by actually participating in pre- and post-clock-in work, as well as work during their unpaid meal periods, through the attendance of a management-level employee who would accompany Plaintiffs and the members of the putative IWPCA Sub-Class to perform work duties before and after they were clocked in.

109. Defendants regularly observed, without objection or negative comment, the record and documentation of having Plaintiffs and the members of the putative IWPCA Sub-Class perform services before and after they have been clocked in, and work through their meal periods, through their review of the scheduling and performance logs and other documentation of performing pre- and post-clock-in work and work during meal periods.

110. Defendants' policy manual provides that their employees are to be paid for all time worked, including overtime.

111. When Defendants hired Plaintiffs and the members of the putative IWPCA Sub-Class and advised them of the specific hourly rate they would be paid for all work performed by them, Defendants did not inform Plaintiffs and the members of the putative IWPCA Sub-Class that they would not be paid for the services they performed before and after they were permitted to clock in and required to clock out.

112. When Defendants hired Plaintiffs and the members of the putative IWPCA Sub-Class and advised them of the specific hourly rate they would be paid for all work performed by them, Defendants did inform Plaintiffs and the members of the putative IWPCA Sub-Class that rest and meal periods would be intended to provide employees with an opportunity for rest and relaxation, and that employees would be entirely relieved of responsibilities during their meal periods.

113. Defendants have failed to pay Plaintiffs and the members of the putative IWPCA Sub-Class the full amount due for all time worked on their regularly scheduled work days, including but not limited to their final compensation, because Defendants did not pay them for the  time worked before they were clocked in, after they were clocked out, and for time worked during their meal periods, in violation of the IWPCA, 820 ILCS § 115/4.

114. Defendants have failed to pay Plaintiffs and the putative class the full amount for all hours worked because of the improper practices described herein.

115. Illinois Statutes 820 ILCS §§115/1 et seq. defines wages as "any compensation owed to an employee by an employer pursuant to an employment contract or agreement between the two parties...".

116. Under the IWPCA, payment to separated employees is termed "final compensation" and is defined as "wages, salaries, earned commissions, earned bonuses...and any other compensation owed the employee by the employer pursuant to any employment contract or agreement between the two parties." 820 ILCS § 115/2.

117.   Illinois Statutes 820 ILCS §115/4 requires employers to pay employees all wages earned by an employee during a semi-monthly or bi-weekly pay period no later than 13 days after the end of the pay period in which such wages were earned.

118. Illinois Statutes 820 ILCS §115/5 provides that "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly schedule payday for such employee."

119.   Defendants violated Illinois Statutes 820 ILCS §§115 et seq. by regularly and repeatedly failing to properly compensate Plaintiffs and the putative Illinois class members for the actual time they worked each week within 13 days of the date such compensation was earned, and by failing to properly compensate Plaintiffs and class members their rightful wages by the next scheduled payday after their separation.

120. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the putative class members have suffered and will continue to suffer lost wages and other damages.

121. Plaintiffs and the members of the putative IWPCA Sub-Class have been damaged by not being paid the full amount of wages due to them for all time worked, in an amount not presently ascertainable, for the relevant time period.

WHEREFORE, Plaintiffs, JONATHAN MARTINEZ and RAQUEL SAUCEDO pray that this Court award the following relief under Count III:

A. Certify a class of individuals who were employed by Defendants as hourly-paid non-exempt workers in the State of Illinois at any time during the relevant statute of limitations period;

B. Declare and find that the Defendants committed one or more of the following

acts:

    i. Violated provisions of the Illinois Wage Payment & Collection Act, 820 ILCS §115 et

seq., by failing to pay agreed upon wages and final compensation to Plaintiffs;

    ii. Violated overtime provisions of the Illinois Wage Payment & Collection Act, 820

ILCS §115 et seq., by failing to pay agreed upon overtime wages to Plaintiffs; and

    iii. Willfully violated minimum wage and overtime provisions of the Illinois Minimum

Wage Law, 820 ILCS §105 et seq., by failing to pay the agreed upon amounts due.

C. Award compensatory damages, including all regular and overtime pay owed, in an amount

according to proof;

D. Award statutory liquidated damages on all regular and overtime compensation due

accruing from the date such amounts were due;

E. Enjoin Defendants from failing to pay Plaintiffs for all worked performed by Plaintiffs in

the future; and

F. Award all costs and reasonable attorneys' fees incurred in prosecuting this claim;

and

G. For such further relief as the Court deems just and equitable..

JURY DEMANDED ON ALL COUNTS

Date: July 6, 2016

                            **Respectfully Submitted,**
                            **J O N A T H A N   M A R T I N E Z   A N D**
                            **RAQUEL SAUCEDO,**
                            **Individually and on Behalf of**
                            **All Others Similarly Situated.**

By: /s/ Jeffrey Grant Brown
       Jeffrey Grant Brown
       One of Plaintiffs' attorneys

Jeffrey Grant Brown                  Glen J. Dunn, Jr.
Jeffrey Grant Brown, P.C.         Glen J. Dunn & Associates, Ltd.
221 North LaSalle Street, Suite 1414   221 North LaSalle Street, Suite 1414
Chicago, IL 60601              Chicago, IL 60601
312.789.9700                 312.546.5056